UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60777-CIV-UNGARO/DUBÉ

STANLEY MARTINEZ,

     Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the

Defendant (D.E. #16) and the Motion for Summary Judgment filed by the Plaintiff (D.E. #20)

pursuant to an Order of Reference entered by the Honorable Ursula Ungaro, United States District

Judge. The issue before this Court is whether the record contains substantial evidence to support the

denial of benefits to the Plaintiff Stanley Martinez (hereinafter "Martinez" or "Plaintiff").

## I. FACTS

On March 11, 2004, Martinez filed an applications for disability insurance benefits (DIB) and

Supplemental Security Income (SSI) alleging a disability onset date of September 25, 2001. (R. 54-

57).[1] The application was denied initially and on reconsideration. (R. 32-38). An initial hearing was

held on March 28, 2007. (R. 240-265). Following the hearing, the ALJ issued a decision denying

the request for benefits. (R. 14-26). A request for review filed with the Appeals Council was denied.

(R. 6-8).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's
answer.

The Plaintiff, age 37 at the time of the hearing on March 28, 2007, testified that he had a ninth grade special education and that he was previously awarded benefits as a child because of a "learning disability, dyslexia." (R. 244-245). Martinez stated that his benefits were terminated because he stopped seeing his doctors. (R. 245). The Plaintiff also testified that he previously worked as a carpet cleaner, at a car wash and as a telemarketer. According to the Plaintiff, he could not perform these jobs as he was unable to maintain focus and follow instructions. (R. 246-247).

The Plaintiff testified that he has pain in his right leg resulting from a fall off a motorcycle five years ago. Martinez stated that he has not sought treatment for his leg injury and experiences pain of 6 or 7 on a scale of 1 to 10. (R. 248). The Plaintiff stated that he is disabled because of a mental condition. He added that he cannot concentrate for 20 minutes or watch a television show and then described what he had watched; has a poor memory; and hears voices. (R. 249). Martinez testified that he takes medication, but that the medications do not help as he still hears voices and sees shadows. (R. 250).

The Plaintiff stated that he has children but does not live with them. Martinez also stated that he does not do laundry, vacuum or perform household chores. The Plaintiff testified that he is impatient with people and doesn't really want to talk with them. (R. 251). Additionally, Martinez testified that he is unable to follow work rules; relate to co-workers; relate to supervisors; tolerate the stress of a normal job situation; or concentrate for eight hours at work. (R. 252-253).

Martinez testified that he lives with his mother, but prior to that was living with his girlfriend. (R. 253-254). He stated that during that time she took care of their child and he did not help. (R. 254). The Plaintiff stated that he no longer does drugs or drinks alcohol. According to Martinez, his typical day consists of watching television and handing his mother her medications and her

respiratory breathing machine.  He added that he is able to take his own showers and groom himself but that he does not cook. (R. 256).

Martinez stated that when he goes out he either goes for a walk or uses the bus because he does not have a driver's license.  The Plaintiff said that he sometimes has problems taking the bus because he does not have money. (R. 257).  Martinez helps his mother with the cleaning and shopping. (R. 257-258).  The Plaintiff stated that his hobby is fishing, but he had not gone fishing "in a long time." (R. 258).

In addition to the Plaintiff's testimony, David Crystal, a vocational expert testified at the hearing.  The VE described the Plaintiff's past relevant work as follows:

> ... he worked as a car wash attendant, which is DOT 915.667-10.  It's at the light exertional level, unskilled, SVP of 2.  He worked as a rug cleaner helper, DOT 362.686-014.  It's at the medium exertional level. It's unskilled, SVP is 2.  And he worked [as] a telephone solicitor. That's 299.357-014.  It's at the sedentary exertional level.  It's semi-skilled, SVP is 3.

(R. 261).  The ALJ then asked the VE several hypothetical questions.  The first assumed a hypothetical person with no exertional limitations but mental limitations including: only capable of understanding and remembering short, simple instructions and carrying out short, simple instructions. The VE opined that a person with said limitations would be able to perform the Plaintiff's past positions of rug cleaner helper and car wash attendant but would have problems as a telephone solicitor. (R. 261).  The ALJ's second hypothetical included the same mental limitations but added a restriction of performing only light exertional level work.  The VE opined that only the car wash attendant job could be performed. (R. 261-262).  The ALJ's final hypothetical assumed that all the Plaintiff's testimony regarding his limitations as credible; to which the VE stated that such a hypothetical person would not be able to perform the Plaintiff's past relevant work. (R. 262).

3

In addition to the testimony presented at the hearing, the ALJ also reviewed the Plaintiff's medical records.

On May 14, 2004, the Plaintiff was referred to Dr. Luis R. Zaldivar for a psychological evaluation. (R. 180-183). The Plaintiff appeared properly dressed and groomed, and arrived on time for his appointment. (R. 180). The Plaintiff reported that he had been fired from his previous job for, "always being late, for telling me things over and over, I got back stabbed by a fellow employee who told the boss something about me." During the examination Martinez was alert, attentive, responsive and fully oriented. Additionally, he was logical, rational and productive. He reported that he used to abuse marijuana and cocaine but no longer did so. Martinez also stated that he is usually depressed and angry, and does not sleep well. (R. 181).

Martinez received a verbal IQ score of 70; a performance IQ score of 70; and a full scale IQ score of 67 which placed him in the "intellectually deficient" category. (R. 182). He was diagnosed as having polysubstance abuse and mild mental retardation. (R. 183).

On May 3, 2004, a Mental Residual Functional Capacity Assessment form was completed. (R. 184-188). The assessment found that the Plaintiff was not significantly limited in his ability to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and make simple work-related decisions. The Plaintiff was found to be moderately limited in the ability to understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods. (R. 184). Additionally, the Plaintiff was

4

found to be moderately limited in the ability to complete a normal workday and workweek without interruptions and from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. Finally, the Plaintiff was found to be not significantly limited in all areas of social interaction and adaptation. (R. 185).

On May 30, 2004, a Psychiatric Review Technique was performed. The Plaintiff's mental disposition fell into two listing categories: 12.02 - Organic Mental Disorders and 12.09 - Substance Addiction Disorders. (R. 189). The Plaintiff did not meet the "B" functional criteria for the listing. (R. 199). Additionally, his functional limitations were noted as mild restrictions of activities of daily living and difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no limitation in episodes of decompensation, each of extended duration. (R. 199).

On August 4, 2004, a second Mental Residual Functional Capacity Assessment was completed. (R. 204- 207).   The assessment found that the Plaintiff was not significantly limited in his ability to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and make simple work-related decisions. The Plaintiff was found to be moderately limited in the ability to understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods. (R. 204).

Additionally, the Plaintiff was found to be not significantly limited in the ability to complete a normal workday and workweek without interruptions and from psychologically based symptoms

5

and to perform consistent pace without unreasonable number and length of rest periods; interact appropriately with the general public, ask simple questions or request assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and all categories of adaptation.  The Plaintiff was found to be moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 205).

On December 28, 2004, at the Bayview Center for Mental Health, the Plaintiff was diagnosed as having schizoaffective disorder, bipolar type and polysubstance dependence, early partial remission, and a GAF score of 55 was assigned. (R. 225, 230-236).

After the hearing the ALJ issued an opinion wherein he found that the Plaintiff had the severe impairment of mild mental retardation, but did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 25).  The ALJ determined that the Plaintiff retained the residual functional capacity to perform work that only involved understanding, remembering and carrying out short simple instructions. (R. 25).  The ALJ then concluded that the Plaintiff could return to his past relevant work, and was therefore not disabled within the meaning of the Social Security Regulations. (R. 26).

## II.  LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence" is more than a scintilla, but less than a preponderance and is

generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of

7

non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's sole point of contention is that the ALJ erred by failing to find that the Plaintiff met or equaled the listing requirement of 12.05C.

As pointed out by the Defendant, in order for a claimant to satisfy the requirements of 12.05C, the required level of severity for the disorder is met when A, B, C, and D are satisfied. "C" specifically states that "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.05.

It is the opinion of this Court that the ALJ properly determined that the Plaintiff did not satisfy the burden of proving that he met listing 12.05, specifically the Plaintiff did not posses  further physical or mental impairments.  The ALJ found that the Plaintiff had the severe impairment of mild mental retardation. (R. 25).  However, the ALJ rejected the other alleged impairments as not severe within the meaning of the regulations.  Specifically, the ALJ stated as follows:

> The evidence establishes that the claimant has a history of polysubstance abuse with sustained full remission.  More specifically, there is no evidence that he has used alcohol or drugs for more than three years.  Consequently, it is concluded that the claimant's history of polysubstance abuse is not severe within the meaning of the Social Security Act, as amended.

(R. 21).  With regard to the Plaintiff's allegation of severe right leg pain the ALJ added:

> There is absolutely no medical evidence of record to substantiate the claimant's alleged leg injury.  His own testimony is contradictory as to whether or not he has received any treatment for this condition.  The claimant admitted that he takes no prescribed medication for pain.  He has not recently sought, if ever, any medical treatment for this condition.  It is reasonable to assume, therefore, that the claimant's pain is not as severe as alleged.  Accordingly, it is found that his alleged leg injury is not a severe impairment within the meaning of the Social Security Act.

(R. 22).  The Plaintiff contends that based on the Plaintiff's sole visit to Bayview Center for Mental Health, the Plaintiff satisfied the "C" criteria in listing 12.05.  However, as the ALJ correctly pointed out the medical record is silent as to whether the Plaintiff took medications, went for follow-up

9

treatment nor supported the Plaintiff's contention that any medication in fact did not help his condition. (R. 23-24). The ALJ also reviewed the reports prepared by the consultative examiners and considered the Plaintiff's day to day functioning which included tending to his mother.

It is the opinion of this Court that the ALJ's decision is supported by substantial evidence and that decision of the ALJ should be affirmed.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the decision by the ALJ is supported by substantial evidence and the correct legal standards were applied. Accordingly, it is the recommendation of this Court that the Motion for Summary Judgment filed by the Defendant (D.E. #16) be **GRANTED**, the Motion for Summary Judgment filed by the Plaintiff (D.E. #20)[2] be **DENIED** and the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this __31__ day of July, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

---

2 On December 24, 2007, the Plaintiff filed a Motion for Summary Judgment (D.E. #19), however, page 5 was missing. The Plaintiff refiled his Motion for Summary Judgment in its entirety (D.E. #20) on January 5, 2008. Therefore, **D.E. #19 is hereby DEEMED as MOOT**.